UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                   Case Number 15-20317

v.                                                    Honorable David M. Lawson

MAURICE LITTLES, SR.,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

    Defendant Maurice Littles, Sr. has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2).  The government contends that Littles has not exhausted his remedies with the BOP, a necessary prerequisite for seeking compassionate release, but the record shows that he did.  Although Littles presents a close case, he has not demonstrated that extraordinary circumstances justify immediate release or that he qualifies for release under any other provision of section 3582(c)(1).  The Court also does not believe that a recommendation for early placement by the BOP to home confinement is appropriate.  The motion will be denied.

I.

    Littles has served just over two years of a 12-year prison sentence imposed by the Honorable Avern Cohn for drug trafficking and animal cruelty offenses.  Littles was one of the leaders of a criminal organization known as the "500 Block Boys," that sold drugs in the neighborhoods on the east side of Detroit.  He also bred dogs for fighting and organized and

attended dog fights in the City. Littles was indicted with 23 others. He pleaded guilty to conspiracy to distribute controlled substances, and conspiracy to sponsor and exhibit or possess and train animals for an animal fighting venture.

Littles is 49 years old. He originally was designated by the BOP to serve his sentence at FCI Elkton in Ohio. In June of 2018, BOP medical staff discovered that Littles's Prostate-Specific Antigen (PSA) was elevated, indicating the possibility of prostate cancer, which was confirmed by biopsy in November of that year. The BOP transferred him to the Butner Medical Center. The prostate cancer was an aggressive type, and after considering different treatment options, Littles chose radiation coupled with an 18-month hormonal blockade. Treatment began on May 20, 2019. By March of this year, Littles was "doing well overall" according to his doctor, who scheduled a routine follow-up appointment six months later. The BOP then transferred him to Butner Low FCI, where he is currently confined. There have been several hundred cases of COVID-19 at Butner Low with 11 reported deaths.

Littles is diabetic, morbidly obese (BMI = 43.2), and has a history of smoking. All of those conditions are noted by the Centers for Disease Control and Prevention (CDC) to predispose him to complications from COVID-19. And Littles in fact contracted the virus on May 20, 2020, but he was placed in quarantine, where he was closely monitored, and he experienced only mild symptoms. He did not experience a fever, cough, or loss of taste or smell, and his oxygen saturation was near 100%. His attorney has filed updated records as late as July 2 of this year, but there has been no indication that Littles has encountered any medical complications from the virus and presumably has recovered.

The records do show that Littles is hounded by other medical conditions, however. He currently suffers from gastro-esophageal reflux disease (GERD); osteoarthritis of the right knee,

for which he may be a knee-replacement candidate; dental problems; hematuria (blood in his urine), possibly from a urethral stricture; a urinary tract infection; and blood in his stool, for which a colonoscopy is scheduled. He has received or is scheduled for treatment of these ailments.

Littles argues that all of this taken together amount to "extraordinary and compelling reasons" that qualify him for compassionate release from his prison sentence under section 3582(c)(1)(A). The government disagrees.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f

the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

A.

The government contends that Littles has not exhausted his remedies. Littles initially asserted that he had, but he did not provide any evidence of exhaustion. The government asserted it had no record of any Littles making a request for release, but it likewise failed to provide any evidence on the issue of exhaustion.

The parties supplemented the record after the Court directed them to do so. The government submitted the declaration of Christina Kelley, a Senior Attorney with the BOP located at FCI Butner. She states that the BOP has no record of any of Littles' requests and that a search of the Reduction in Sentence (or compassionate release) database does not show any request from Littles. She also states that the reduction-in-sentence coordinator at Butner does not have any record of Littles making a request. Finally, she states that neither Littles's Unit Manager nor his Case Manager are aware of any compassionate release request from Littles.

However, Littles submitted documents undercutting Kelley's declaration, showing that he requested compassionate release — twice. The first request was submitted to a unit social worker, per instructions from the prison. Littles says he submitted it sometime around April 10, 2020. He received a hand-written response from "Ms. Cook" saying that his request was submitted "to FCC Butner," but she noted that no grounds for release were identified. Littles then sent a second request on May 25, 2020 aimed directly at the warden. But he received a response saying that he had to submit such compassionate release requests to his unit team or social worker (which he had

done earlier). Bureaucracy, especially prison bureaucracy, can be exhausting. So it is with Littles, who made a proper request for compassionate release and waited 30 days without a response from the warden. He has satisfied section 3582(c)(1)(A)'s exhaustion requirement.

B.

Under that statute, the Court can order a reduction of a sentence, even to time served, first, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Littles has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3551(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law,"

and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Littles's crimes were serious. He was a leader of a drug trafficking organization that distributed crack cocaine, powder cocaine, and heroin in Detroit's neighborhoods. When agents searched many of the houses that Littles and his co-conspirators used for their criminal enterprise, they found a large quantity of drugs, 32 firearms, and 24 dogs bred for fighting. Littles was convicted previously of possession of cocaine and heroin and felonious possession of a firearm. He served almost four years in custody for those convictions. And in this case, he has served a relatively small portion of his custody sentence.

These factors do not favor release, but they are not disqualifying by themselves. However, as tortuous as Littles's medical course has been, it does not appear that he presently is at great risk of peril from the coronavirus. Certainly, he has multiple risk factors for complications. But he already had contracted the virus and has recovered. The same can be said for his cancer. It had not metastasized; it was confined to his prostate. He completed radiation therapy by July 2019 and Lupron Depot therapy by March 2020. In March, his PSA had declined to 0.19. And, as noted earlier, his treating physician said that Littles was "doing well overall."

Littles argues that he is at a higher risk for severe illness from COVID-19 because he is immunocompromised and severely obese. Littles is severely obese. And that is a COVID-19 risk factor; but apparently not for Littles, who has had only mild symptoms from the virus. The government agrees that radiation therapy can cause a lowered level of immunity. However, it points out that Littles's recent lab reports show that he is not currently immunocompromised, having a normal white-cell blood count. Neither Littles's age nor medical conditions satisfy the

requirements for release in U.S.S.G. § 1B1.13 cmt. n.1, even when considered in combination with the COVID-19 pandemic.

It is not yet clear whether an individual can contract COVID-19 a second time, but according to the CDC, re-infection of similar type viruses is unlikely in the short term. See https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (explaining viral immunity) (last visited on July 23, 2020). As one court in this district recently held, "[t]he risk of contracting COVID-19 a second time and potentially developing a more severe response is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Bland*, Case No. 18-20555 (E.D. Mich. May 28, 2020) (denying compassionate release to an inmate who "tested positive for COVID-19 . . . experienced mild symptoms, recovered, and was released back to his unit").

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Littles resides, either at home or in prison. He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases. Littles has not demonstrated "extraordinary and compelling reasons" to reduce his sentence to time served.

C.

Littles also requests that the Court recommend that the BOP place him in home confinement under the CARES Act, 18 U.S.C. § 12003(b)(2). A defendant's request for home confinement under the CARES Act is different than a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No.

116-136, § 12003(b)(2), 134 Stat. 281 (2020); *United States of America, v. Benjamin Gordon*, No. CR416-082, 2020 WL 3964041, at *1 (S.D. Ga. July 13, 2020). Section 12001(b)(2) is directed at the Attorney General. If he finds that emergency conditions will materially affect the functioning of the BOP, the Director of the BOP may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 18 U.S.C. § 3624(c)(2). Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). And the Attorney General has done just that: in a memorandum issued on April 3, 2020, the Attorney General utilized his authority under the CARES Act to direct the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), available at https://www.justice.gov/file/1266661/download.

But under section 12001(b)(2), "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP." *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, No. 1911445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible elderly offenders, and the district court was without jurisdiction to grant relief). Therefore, the district court has no authority to grant relief under section 12003(b)(2).

However, the defendant's request might be invoking a similar provision of the Second Chance Act. "The Second Chance Act of 2007 . . . increases a federal prisoner's eligibility for pre-release placement in a halfway house from 6 to 12 months, and requires the Bureau of Prisons

(BOP) to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" *Vasquez v. Strada*, 684 F.3d 431, 432-33 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)). "In accordance with the Act, regulations were issued so that placement in a community correctional facility by the BOP is conducted in a manner consistent with 18 U.S.C. § 3621(b)." *Ibid.* (citing 28 C.F.R. § 570.22). That statute, in turn, states that any recommendation by the sentencing court that a convicted person serve a term of imprisonment in a community corrections facility "shall have no binding effect on the authority of the Bureau . . . to determine or change the place of imprisonment of that person." 18 U.S.C. § 3621(b). Relevant factors that the BOP shall consider include "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission." *Lovett v. Hogsten*, No. 09-5605, 2009 WL 5851205, at *1 (6th Cir. Dec. 29, 2009) (citing 18 U.S.C. § 3621(b)).

Littles's prison record consists of a sanction for phone abuse (October, 2019) and a minor assault (October, 2018). The Court believes that the BOP is in a better position than the Court to assess the propriety of the defendant's placement for reentry at an appropriate time, based on the applicable statutory factors and all of the information then available.

### III.

Littles has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 734) is **DENIED**.

                                                  s/David M. Lawson  
                                                  DAVID M. LAWSON  
                                                  United States District Judge

Dated: July 29, 2020